# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

EUGENE BLAKE, *et al.*,                           )
                                                  )
           **Plaintiffs,**            )
                                                  )
**v.**                                            )        **Civil Action No. 2:08-0906**
                                                  )
JAMES RUBENSTEIN, Commissioner,                   )
West Virginia Division of Corrections, *et al.,*  )
                                                  )
           **Defendants.**           )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending are Plaintiffs' Motion for Preliminary Injunction (Document No. 26.) and Motion for Temporary Restraining Order Without Notice (Document No. 56.). Defendants have filed a Response to Plaintiffs' Motion for Preliminary Injunction (Document No. 78.) and a Response to Plaintiff's Motion for Temporary Restraining Order incorporating by reference their Response to Plaintiffs' Motion for Preliminary Injunction (Document No. 81.). Having examined the record and applicable law, the undersigned has determined, and hereby respectfully recommends, that Plaintiffs' Motions (Document Nos. 26 and 56.) should be denied.

## PROCEDURAL AND FACTUAL BACKGROUND

On July 8, 2008, Plaintiffs, thirteen inmates at Mount Olive Correctional Complex [MOCC], filed a Complaint, an Affidavit and exhibits (Document No. 25.) and a Motion for Preliminary Injunction and Memorandum in Support (Document Nos. 26 and 27.).[1] In their Complaint, Plaintiffs name the following entities and persons as Defendants: West Virginia Department of Military

---

[1] Because Plaintiffs are acting *pro se*, the documents which they have filed are held to a less stringent standard than if they were prepared by a lawyer, and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Affairs & Public Safety, Division of Corrections[2]; James Rubenstein, Commissioner, West Virginia Division of Corrections; David Ballard, Warden of MOCC; C.J. Rider, Religious Services Coordinator at MOCC; Aramark Correctional Services [Aramark]; and Glen McGarry and Keri Coleman, Aramark Supervisors. Citing 42 U.S.C. § 1983, Plaintiffs allege that by their actions and policies, Defendants have without any compelling or legitimate penological interest placed a substantial burden on their practice of the Hare Krishna religion in violation of the First, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and the Religious Land Use and Institutionalized Persons Act (RLUIPA) 42 U.S.C. §§ 2000cc- 2000cc-5(Document No. 25, ¶¶ 9, 10, 21, 25, 26, 37 - 44, 75 - 101, 102.) Specifically, Plaintiffs claim that Defendants are acting in violation of their constitutional rights by

(1)     not providing them with a diet prepared and served in conformity with their religious beliefs[3];

(2)     denying or restricting their participation in Hare Krishna Sankirtana programs[4]and rehabilitative programs, deity puja[5], Ekadasi fast days[6] and

---

[2] The West Virginia Division of Corrections is a public safety division of the West Virginia Department of Military Affairs & Public Safety.

[3] The Hare Krishna prasadam diet is basically vegan and therefore includes various fruits, vegetables, nuts and grains and excludes all animal products (meat, poultry, seafood, eggs, dairy products, honey) and bi-products (gelatin, rennet, whey, etc.). Plaintiff's further contend that the Hare Krishna prasadam diet must be prepared by Hare Krishna devotees and consumed from trays with utensils which have not come in contact in any way with trays and utensils which have been exposed to animal products and/or bi-products.

[4] For Hare Krishna devotees, Hare Krishna Sankirtana programs involve chanting and singing the Mahamantra and studying and hearing stories from Hare Krishna scriptures.

[5] Deity puja involves the ritualistic invocation/worship of one or more deities. The image, usually a figurine or picture, of the deity is presented and prayers, chanting and offerings are made.

[6] Hare Krishna devotees engage in partial fasting twice a month on the days of Ekadasi and total fasting twice a year on the days of the two major Grand Celebrations. On Ekadasi days, they may eat fruits, vegetables and nuts and abstain from eating grains, beans, lentils and peas. On these

celebration of holy days such as Janmastami while allowing Christian and
Muslim programs including the Christian religious program of Kairos[7] and
religious celebrations;

(3)     prohibiting their use of scented oils in their religious ceremonies;

(4)     not providing them with hygiene items containing no animal products;

(5)     not providing supplemental food items consistent with their religious beliefs
in the MOCC commissary; and

(6)     not providing them with a place to display their religious books and
literature.

Plaintiffs attach 26 exhibits to their Complaint including documents indicating the agreement

between the West Virginia Division of Corrections and Aramark respecting the provision of food

services at West Virginia prison facilities, Hare Krishna religious statements and Plaintiffs'

Affidavits including an Affidavit describing Substantial Burdens (Exhibit 20.). Plaintiffs request

injunctive, declaratory and monetary relief.

By their Motion for Preliminary Injunction (Document No. 26.), Plaintiffs reiterate the

claims which they state in their Complaint and state that they are experiencing irreparable harm "[a]s

a result of Defendants' irresponsible actions and deliberate indifference in refusing to provide proper

accommodation for Plaintiff's religious beliefs, i.e., forcing Plaintiffs to choose between maintaining

their physical health and following their religious beliefs, with each passing day that Plaintiffs are

non-compliant with the religious laws of the Hare Krishna religion, Plaintiffs are drawn further into

sin, resulting in further accumulated peril for Plaintiffs' eternal souls, thereby leading Plaintiffs to

perdition. Likewise, the humiliation and mental anguish associated with forcing Plaintiffs to break

their sacred vows causes them irreparable damage that is compounded daily." (Document No. 26,

---

latter days, the devotees engage in prayer, chanting and sacred readings.

[7] Kairos is a Christian prison ministry which offers programs in many prisons in the United
States.

¶ 2). Plaintiffs further state that the harm they are experiencing outweighs any harm which might result to Defendants from the issuance of an injunction and the public's interest will be served through the enforcement of their important constitutional rights. (Id., ¶¶ 3 - 4.) They request that the District Court order Defendants

(1)   to provide them with a nutritionally balanced diet prepared and served in conformity with their religious beliefs;

(2)   to allow them to receive packages of food from the Hare Krishna community four times a year;

(3)   to permit their participation in religious programs, fasting days and at least three major Hare Krishna holy days with special holiday meals;

(4)   to make food and other items which comport with their religious beliefs available at the MOCC Commissary;

(5)   to permit their possession of Hare Krishna religious books, scriptures, calendars and catalogs and/or computers and software containing the same; prayer beads, scented oil, deity figurines, clothing, pictures and cabinets;

(6)   to house them in single occupancy cells and permit them to take showers every day at 4:00 a.m. and at other times according to their religious beliefs; and

(7)   to develop policies and procedures assuring that their constitutional rights are fully accommodated.

Plaintiffs attach an Affidavit regarding the Hare Krishna Religion and an Affidavit Summary History of Facts to their Motion.

On November 26, 2008, Plaintiffs filed a Motion for Temporary Restraining Order Without Notice. (Document No. 56.) Plaintiffs raise essentially the same issues in this Motion as they raise in their Motion for Preliminary Injunction.

By their Response to Plaintiff's Motion for Preliminary Injunction (Document No. 78.), Defendants state that Thomas A. Drescher, a Hare Krishna devotee, filed a civil action in the Circuit Court of Kanawha County, West Virginia, in 2007 essentially alleging the same claims as Plaintiffs allege herein and in June, 2007, Circuit Judge Kaufman dismissed the case finding that Mr. Drescher's constitutional and RLUIPA rights were not violated. Defendants therefore assert that

4

in view of Circuit Judge Kaufman's findings, Plaintiffs' claims herein are barred by operation of the doctrine of *res judicata*.[8] Defendants further assert that they have not violated Plaintiffs' constitutional rights as Plaintiffs allege attaching and referring to the Affidavit of C. J. Rider, the Religious Services Coordinator for Mount Olive Correctional Complex and a Defendant in this matter. (Document No. 78, Exhibit 3.) Mr. Rider states as follows respecting Plaintiffs' claims (references to Exhibits omitted):

> 4. Mount Olive Correctional Complex has not refused to provide Plaintiffs with a prasadam diet. Hare Krishna devotees are provided with a vegetarian, non-flesh diet which excludes the presence of meat, fish, eggs and their byproducts, as is overseen by a dietician.
>
> 5. Mount Olive Correctional Complex has a compelling interest to maintain a religious special diet program that is both cost effective and addresses the prohibited food of the different beliefs represented. The non-flesh religious special diet addresses these issues for several different beliefs of which the Hare Krishna faith is one part.
>
> * * *
>
> 7. Neither the secure, cost effective and orderly operation of the dining room, nor the custody requirements of a maximum security prison, will permit us to afford any faith group the right to prepare meals exclusively for members of their own faith group. However, Hare Krishna inmates may apply to work in the kitchen in the same manner as non-Hare Krishna inmates.
>
> 8. The religious special diets are prepared in a special area using utensils, trays, pots, appliances, etc., used only in the preparation of those meals. The handles of the pots, pans, and utensils used to prepare and serve the Hare Krishna devotees' food have been dipped in yellow coating to distinguish them so that they will not come in

---

[8] Defendants have made the same argument in seeking dismissal of Mr. Drescher's action in *Drescher v. Rubenstein, et al.*, Civil Action No. 5:07-0520, currently pending in this District Court. Judge Kaufman dismissed Mr. Drescher's Civil Rights Complaint pursuant to *W. Va. Code* § 25-1A-4(b). That section is equivalent to 28 U.S.C. § 1915A insofar as it requires an initial review of inmates' complaints to determine if they are frivolous, malicious, fail to state a claim for which relief may be granted or seek monetary relief from a defendant who is immune from such relief and permits dismissal of complaints on those bases without any response from the defendant(s). *See also* 28 U.S.C. § 1915(e)(2). The undersigned will not consider the *res judicata* effect, if any, of Judge Kaufman's dismissal of Mr. Drescher's Civil Rights Complaint upon these proceedings because Judge Kaufman's reached his decision summarily without any development of the case. Rather, the undersigned will consider Plaintiffs' requests for injunctive relief upon their merits.

contact with mainline population food. Yellow trays are provided for the Hare Krishna devotees' use for this same purpose. The refrigerator, sinks, and preparation tables used for the preparation and storage of the non-flesh religious special diet are maintained in a cage-like area that is locked when not in use. A separate stove/oven is also used for the preparation of this vegetarian food. It is established procedure that all of the yellow pots, pans, trays and other utensils are washed separately from those of the mainline population.

9. With regard to Hare Krishna Inmates' participation in 24 Ekadasi fast days per year, Mount Olive Correctional Complex has checked with other prison jurisdictions including the Federal BOP and has not found anyone who accommodates the Ekadasi fast days. These fast days are similar in nature to a personal decision made by adherents of various beliefs to fast on special occasions and for special reasons. Mount Olive does not accommodate personal fasts in any special way, but Hare Krishna devotees are never forced to eat items they do not wish to eat. They are also permitted to supplement food items from free flow if they wish.

10. With regard to Hare Krishna inmates' participation in the approximately 22 holy days per year, regard to Hare Krishna Inmates' participation in 24 Ekadasi fast days per year, Mount Olive Correctional Complex has a compelling governmental interest to be equitable in what it offers for various faith groups. At present, various groups, including the Hare Krishna faith, are provided a special feast meal once a year. Hare Krishna devotees are not prohibited from celebrating any special days in an appropriate manner (praying, chanting, etc.) even though special foods are not provided. Additionally, it is equitable since other beliefs have more than one special day they recognize and are only given one special meal per year.

11. With regard to Plaintiffs' claim that the co-op exchange inmate store does not currently carry a sufficient quality of items acceptable for their consumption as Hare Krishna devotees, regard to Hare Krishna Inmates' participation in 24 Ekadasi fast days per year, Mount Olive Correctional Complex has a compelling governmental interest in working with its contract provider to provide items in the exchange that are of general interest to the inmate population because they are items that sell. The items sold in the regard to Hare Krishna Inmates' participation in 24 Ekadasi fast days per year, Mount Olive Correctional Complex exchange are state-wide contract issues and not religious items.

12. With regard to Plaintiffs' engaging in Hare Krishna Deity Puja (worship) with deity figures and scented oils, each of the Plaintiffs is permitted to possess in his cell a photograph of his deities. Mount Olive Correctional Complex has a compelling governmental interest not to permit scented oils or incense. No matter how lightly the oils or incense are scented, they could be used to mask illegal activities such as smoking marijuana. Unscented oils are available for inmates to purchase to worship activities.

13. Mount Olive Correctional Complex has not refused to all Plaintiffs to participate in sankirtana rehabilitative programs. To the extent an approved national Hare Krishna ministry would desire to plan and present an event, such [as] is done by the

Christian group Kairos, such an event would be permitted, subject to security requirements.

14. Mount Olive Correctional Complex schedules a time each week for inmates to take part in a Hare Krishna religious service in the chapel. The Hare Krishna followers continue to participate in weekly use of the Chapel for prayers and private devotions. The prison also plays Hare Krishna videos over the closed circuit television on a regular basis. The Hare Krishna devotees also have the opportunity to use the Chapel for services by outside religious leaders so long as they make a reasonable request and provide reasonable notice of at least thirty days prior to the intended visit.

15. With regard to Plaintiffs' request for each of them to be provided with a laptop or other computer equipped with the Hare Krishna Bhaktivedenta Folio Programs, along with Microsoft Word, memory cards, and a printer, the Hare Krishna devotees have been permitted to keep religious books and writing in their cell. Mount Olive Correctional Complex does not purchase a computer or its accessories for the cell of any inmate.

16. The Hare Krishna inmates are permitted to receive literature form recognized organizations which distribute religious articles and materials to Hare Krishna individuals. I, in fact, facilitate the distribution of various religious items to at least one of the Hare Krishna devotees on a regular basis.

17. Hare Krishna literature that is donated to the Chapel is available to anyone that desires it. I made a determination that it would be better to keep such literature in a cabinet for those who truly show an interest in it rather than allowing it to be carried away where no one would have access to it since there are limited quantities. As such, Mount Olive Correctional Complex has continued to make Hare Krishna religious educational pamphlets and documents available at the Chapel.

18. The Hare Krishna devotees have been allowed to possess religious beads, pouches, etc. they, like all other inmates, may wear only one of these religious necklaces at a time.

19. Plaintiffs ask that Defendants promulgate a policy where Plaintiffs receive quarterly packages of food, herbal teas, and spices from the New Vrindaban community. Hare Krishna inmates are permitted to write ISKON for supplies consistent with their religious beliefs.

20. Neither the secure, cost-effective and orderly operation of the Mount Olive Correctional Complex, nor the custody requirements of a maximum security prison will permit us to afford the individual members of any faith the right to shower at 4:00 a.m. and at least tow other times throughout the day as they use the rest room.

21. With regard to Plaintiffs' desire for extra "razors, deodorant, soap, shampoo, toothpaste, [and] toothbrush[es]," Mount Olive Correctional Complex has a compelling governmental interest to maintain procedures that ensure cost effectiveness in the distribution of hygiene products to the inmate population. Mount Olive Correctional Complex Operational Procedure 4.03 outlines the items and the amount of the items to be distributed, and this is what we follow. Mount Olive Correctional Complex does not purchase any products for any inmate in order for

them to practice their declared belief.

22. With regard for Plaintiffs request that Mount Olive Correctional Complex prevent volunteers and staff from speaking against Plaintiffs' religious beliefs, we do not let any volunteer or staff promote violence or retaliation in the name of religion.

23. Plaintiffs request for permanent housing of each of them in a single occupancy cell for the remainder of his sentence and for permission to freely correspond with prisoners in other correctional facilities is a secular interest, not in keeping with a religious belief.

Mr. Rider's Affidavit includes as exhibits pictures of the space at MOCC where trays and utensils are kept, the December, 2008, religious service schedule indicating weekly Hare Krishna services and the MOCC TV schedule for religious services indicating that two of a series of lectures of Srila Prabhupada, a leading figure in the Hare Krishna religion known for, among many other things, establishing the International Society for Krishna Consciousness [ISKON] and the New Vrndavana community near Moundsville, West Virginia, were shown.[9]

## **APPLICABLE STANDARDS**

In considering whether to issue an injunction, the District Court must balance the hardships likely to befall the parties if the injunction is, or is not, granted. Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 196 (4th Cir. 1977). Proper balancing of the hardships requires the District Court to weigh the relative importance of four factors:

(1)    the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;

(2)    the likelihood of harm to the defendant if the requested relief is granted;

(3)    the likelihood that the plaintiff will succeed on the merits; and

(4)    the public interest.

---

[9] The undersigned notes that Defendants have recently filed a Reply to Plaintiffs' Response to their Motion to Dismiss (Document No. 97.) which includes the Affidavit of David Ballard, Warden of MOCC, and numerous exhibits indicating the measures taken at MOCC to accommodate Plaintiffs' and other inmates' rights to exercise their religious beliefs freely.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997)(quoting Rum Creek Coal Sales, Inc., v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991)). Consideration of the first two factors is the first step in the analysis. Blackwelder, 550 F.2d at 196. If the District Court concludes that the balance of the potential hardships favors the Plaintiff, then "it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success." Id.  When injunctive or prospective relief is requested in the context of allegations that prison conditions violate constitutional rights, 18 U.S.C. § 3626 requires that the District Court focus its attention on additional factors in assessing whether such relief is appropriate and, if so, ordering it. Title 18, U.S.C. § 3626(a)(1)(A) states when prospective relief is appropriate with respect to prison conditions as follows:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The Court shall not grant or approve any prospective relief unless the court finds that such is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

> Rule 65(b) sets forth the limited circumstances under which a temporary restraining order can be granted as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

The Fourth Circuit explained the different functions of temporary restraining orders and preliminary injunctions in Hoechst Diafoil Company v. Nan Ya Plastics Corporation, 174 F.3d 411, 422 (4th Cir.

9

1999), as follows:

> While a preliminary injunction preserves the status quo pending a final trial on the
> merits, a temporary restraining order is intended to preserve the status quo only until
> a preliminary injunction hearing can be held: '[U]nder federal law [temporary
> restraining orders] should be restricted to serving their underlying purpose of
> preserving the status quo and preventing irreparable harm just so long as is necessary
> to hold a hearing, and no longer.' Granny Goose, 415 U.S. at 439.

## **DISCUSSION**

Plaintiffs request the issuance of a preliminary injunction/temporary restraining order under

Section 1983 and RLUIPA. Claims under the First Amendment and RLUIPA are separate causes of

action. Jones v. Goord, 435 F.Supp.2d 221, 260 (S.D.N.Y. 2006). Plaintiffs' request is therefore

twofold: (1) a request for injunctive relief under Section 1983 for alleged violations of the Free

Exercise Clause of the First Amendment, the Fifth, Eighth and Fourteenth Amendments and (2) a

request for injunctive relief under RLUIPA.[10] See Chase v. City of Portsmouth, 2005 WL 3079065,

* 5 (E.D.Va.)("[T]he plaintiffs cannot use Section 1983 as a vehicle for a RLUIPA claim because the

statute provides for 'appropriate relief' against the government. § 2000cc-2(a). A plaintiff may not

use Section 1983 where the underlying statute has its own comprehensive enforcement scheme. See

City of Rancho Palos Verdes v. Abrams, ___ U.S. ___, ___, 125 S.Ct. 1453, 1459, 161 L.Ed.2d 316

(2005).") Courts have concluded that RLUIPA has broader applicability and establishes greater

protection to inmates against government-imposed burdens upon their religious exercise than the First

Amendment. Smith v. Allen, 502 F.3d 1255, 1266 (11th Cir. 2007); Lovelace v. Lee, 472 F.3d 174,

198 - 199 (4th Cir. 2006)("RLUIPA incorporates and exceeds the Constitution's basic protections of

---

[10] "RLUIPA is the latest of long-running congressional efforts to accord religious exercise
heightened protection from government imposed burdens." Cutter v. Wilkinson, 544 U.S. 709, 714
125 S.Ct. 2113, 2117, 161 L.Ed.2d 1020 (2005).

religious exercise.")[11]; Warsoldier v. Woodward, 418 F.3d 989, 994 (9th Cir. 2005)("Congress did this by replacing the 'legitimate penological interest' standard articulated in Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), with the 'compelling governmental interest' and 'least restrictive means' tests codified at 42 U.S.C. § 2000cc-1(a). See also Cutter, 125 S.Ct. At 2119.") For example, RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Under the First Amendment, religious exercise is "the observation of a central religious belief or practice." Hernandez v. Commissioner, 490 U.S. 680, 699, 109 S.Ct. 2136, 2148, 104 L.Ed.2d 766 (1989). Additionally, RLUIPA applies "even where the burden on religious exercise "results from a rule of general applicability . . .." 42 U.S.C. § 2000cc-1. Under the First Amendment, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." Church of The Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531, 113 S.Ct. 2217, 2226, 124 L.Ed.2d 472 (1993). Finally, as the Fourth Circuit recognized in Lovelace v. Lee, 472 F.3d at 199, Court's give "deference to the officials who run a prison, overseeing and coordinating its many aspects, including security, discipline, and general administration." In the context of allegations of constitutional violations, "deference is achieved in part through application of a reasonableness test that is less restrictive than the test ordinarily applied to alleged infringements of fundamental constitutional

---

[11] The Fourth Circuit noted in *Lovelace v. Lee* that "[i]n its most basic protections, RLUIPA mimics the First Amendment. RLUIPA incorporates the 'substantial burden' test used in First Amendment inquiries and expressly refers to the Free Exercise Clause in allocating its burden of proof. * * * The primary difference . . . is that RLUIPA adopts a 'more searching standard' of review than that used for parallel First Amendment claims, strict scrutiny instead of reasonableness. *Madison*, 355 F.3d at 314-15 n. 1; *see also Freeman*, 369 F.3d at 857-58 n. 1." *Lovelace v. Lee*, 472 F.3d at 198 fn. 8

rights." Id. The Fourth Circuit indicated that less deference is afforded to prison officials under

RLUIPA. Lovelace v. Lee, 472 F.3d at 199 - 200.

**A.      Injunctive Relief for Alleged RLUIPA Violations.**

     42 U.S.C. § 2000cc-1 provides as follows:

> No government shall impose a substantial burden on the religious exercise of a
> person residing in or confined to an institution, as defined in section 1997 of this
> title, even if the burden results from a rule of general applicability, unless the
> government demonstrates that imposition of the burden on that person –
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-2(b) provides:

> If a plaintiff produces prima facie evidence to support a claim alleging a violation of
> the Free Exercise Clause or a violation of 2000cc of this title, the government shall
> bear the burden of persuasion on any element of the claim, except that the plaintiff
> shall bear the burden of persuasion on whether the law (including a regulation) or
> government practice that is challenged by the claim substantially burdens the
> plaintiff's exercise of religion.

Thus, Plaintiffs in this case have the initial burden of demonstrating that Defendants' practices and

policies have substantially burdened their religious activities. In Lovelace v. Lee, 472 F.3d 174, 187

(4th Cir. 2006), the Fourth Circuit Court of Appeals adopted the definition of "substantial burden"

announced by the United States Supreme Court in the Free Exercise Clause context in Thomas v.

Review Bd. Of Ind. Employment Sec. Div., 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624

(1981), stating that "a substantial burden on religious exercise occurs when a state or local

government, through act or omission, 'put[s] substantial pressure on an adherent to modify his

behavior and to violate his beliefs.'" If Plaintiffs are found to have demonstrated that Defendants'

practices or policies have substantially burdened their religious activities, the Defendants then must

prove that their practices or policies are in furtherance of a compelling governmental interest and are the least restrictive means of furthering that compelling governmental interest.

Reading Plaintiff's Motion for Preliminary Injunction (Document No. 26.) and Motion for Temporary Restraining Order Without Notice (Document No. 56.) liberally as the Court must and considering Defendants' Response to Plaintiffs' Motion for Preliminary Injunction (Document No. 78.) and the Affidavit of C. J. Rider, the Religious Services Coordinator for Mount Olive Correctional Complex and a Defendant in this matter. (Document No. 78, Exhibit 3.), the undersigned finds that Plaintiffs have not produced any evidence demonstrating that Defendants' conduct and policies have substantially burdened their religious activities. It is clear that inmates are entitled to a diet in conformity with their religious beliefs under the Free Exercise Clause and RLUIPA. Lovelace v. Lee, 472 F.3d at 198 - 199. Plaintiffs claim that their diet is contaminated insofar as they are served food items containing animal products and/or bi-products on trays and with utensils which are contaminated by their contact with trays and utensils which have been exposed to such products and/or bi-products. Mr. Rider refutes Plaintiffs' claims in Paragraphs 4 through 8 of his Affidavit stating that Plaintiffs are served a non-flesh religious diet free from animal product and bi-product contamination upon yellow trays and with utensils kept separate from contaminated trays and utensils.[12] Mr. Rider attaches pictures depicting the place at MOCC where

---

[12] The undersigned finds Plaintiffs' Affidavits self-serving and conclusory and therefore not probative. *See Evans v. Technologies & Applications Service Co.*, 80 F.3d 954, 962 (4th Cir. 1996)("[w]e generally consider self-serving opinions without objective corroboration not significantly probative . . ..") Mr. Rider's Affidavit on the other hand includes copies of pictures and documents which corroborate his statements and therefore has probative value. Warden Ballard's statements contained in his Affidavit (Document No. 97, Exhibit 1.) likewise are corroborated by the documents attached to Defendants' Reply to Plaintiffs' Response to their Motion to Dismiss (Document No. 97.) and are probative. The Affidavits of Mr. Rider and Warden Ballard substantially refute Plaintiffs' claims as contained in their pleadings and Affidavits that they are substantially

the trays and utensils are kept. It is certainly not clear from the record that Plaintiffs are experiencing a substantial burden upon the exercise of their religious beliefs in these regards such that there is any likelihood of irreparable harm if their requests for a preliminary injunction/temporary restraining order are denied. The record further does not indicate that Plaintiffs are substantially burdened in their practice of the Hare Krishna religion by the Defendants' denial or restriction of their participation in Hare Krishna Sankirtana programs and rehabilitative programs, deity worship, Ekadasi fast days and celebration of holy days. Mr. Rider refutes Plaintiffs' claims in these regards in Paragraphs 9, 10 and 12 - 14 of his Affidavit. Mr. Rider also attaches a copy of the December, 2008, religious service schedule indicating weekly Hare Krishna services and the MOCC TV schedule for religious services indicating that two of a series of lectures of Srila Prabhupada were broadcast. It is evident therefore that Defendants are accommodating Plaintiffs in their exercise of their religion in these regards. Nothing in the record beyond Plaintiffs' mere allegations indicates that through their practices and policies Defendants are putting substantial pressure on Plaintiffs to modify their behavior and violate their beliefs in these regards. It is further evident from Mr. Rider's Affidavit that Defendants are making Hare Krishna religious books and scriptures available to Plaintiffs, permitting Plaintiffs to wear religious beads, use unscented oil and worship their deities and providing a place for the keeping of religious literature. The undersigned finds no evidence to the contrary in the many pages which Plaintiffs have filed herein. It is therefore not evident that Plaintiff's are substantially burdened in the practice of their religion in these regards. The undersigned finds nothing in the record indicating that Defendants have violated Plaintiffs' rights under RLUIPA. Accordingly, the undersigned finds that it is not evident that Plaintiffs are or will

---

burdened in the exercise of their religious beliefs.

suffer irreparable harm as a consequence of Defendants' conduct and policies in the exercise of their religious beliefs, and their Motions for a Preliminary Injunction/Temporary Restraining Order under RLUIPA should be denied.

**B.      Injunctive Relief for Alleged Constitutional Violations.**

Plaintiffs allege violation of their First, Fifth, Eighth and Fourteenth Amendment rights. Inmates clearly retain certain constitutional protections notwithstanding their convictions and confinement in prison. Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984); Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). "[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Generally speaking, to prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

Of the rights retained by inmates upon incarceration is the First Amendment right to practice their religion while in prison. See O'Lone, v. Estate of Shadbazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987). The First Amendment[13] of the United States Constitution states as follows:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

---

[13] The First Amendment applies to State governments through the Fourteenth Amendment. *Board of Education of Kiryas v. Grumet*, 512 U.S. 687, 690, 114 S.Ct. 2481, 2484, 129 L.Ed.2d 546 (1994.)

It has long been recognized, however, that some limitation or restriction of First Amendment rights

is required by virtue of the prison environment. The Fourth Circuit stated in Brown v. Peyton, 437

F.2d 1228, 1231 (4th Cir. 1971), as follows:

> Prison officials have to confine dangerous men in unpleasant circumstances. They
> must protect the public at large, prison employees, and also other prisoners, who are
> almost totally dependent on the prison for their well-being. Prison officials have a
> legitimate interest in the rehabilitation of prisoners, and may legitimately restrict
> freedoms in order to further this interest, where a coherent, consistently-applied
> program of rehabilitation exists. Furthermore, many restrictions on first amendment
> rights are undoubtedly justifiable as part of the punitive regimen of a prison:
> confinement itself, for example, prevents unlimited communication with the outside
> world but is permissible in order to punish and deter crime; additional restrictions
> may be imposed as part of the system of punishing misbehavior within prison.
> Finally, the state has an interest in reducing the burden and expense of
> administration. It may, for example, place reasonable restrictions on the number of
> publications received by each inmate in order to limit the burden of examining
> incoming materials. But the fact that interests of these sorts frequently arise does not
> excuse the necessity of a showing that they exist in a particular case.

See also Cruz v. Beto, 405 U.S. 319, 322, fn. 2, 92 S.Ct. 1079, 1082, fn. 2, 31 L.Ed.2d 263

(1972)("We do not suggest, of course, that every religious sect or group within a prison – however

few in number – must have identical facilities or personnel. A special chapel or place of worship

need not be provided for every faith regardless of size; nor must a chaplain, priest or minister be

provided without regard to the extent of the demand. But reasonable opportunities must be afforded

to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment

without fear of penalty.") Under the Free Exercise Clause, States are prohibited from enacting laws

"designed to suppress religious beliefs or practices." Hines v. South Carolina Dept. of Corrections.,

148 F.3d 353, 357 (4th Cir. 1998). The United States Supreme Court has formulated two analyses

to determine whether a State law violates the Free Exercise Clause of the First Amendment. First,

if the law proscribes or prohibits conduct irrespective of religious and secular views, the law is

considered neutral and therefore, does not violate the Free Exercise Clause. See Booth v. Maryland, 3275 F.3d 377, 380 (4th Cir. 2003)(citing, Employment Div., Dept. of Human Res. v. Smith, 494 U.S. 872, 876-79, 110 S.Ct. 1595, 1598-1600, 108 L.Ed.2d 876 (1990)). Second, if the law is reasonably related to legitimate penological interest, then the law is valid and does not violate the Free Exercise Clause. See O'Lone, 482 U.S. at 349, 107 S.Ct. at 2405. To determine the reasonableness of the law, the Court should consider the follow factors:

> (1) a regulation must have a logical connection to legitimate governmental interest invoked to justify it; (2) the inmates should have alternative means of exercising their religious rights; and (3) accommodating the inmates' rights should not severely impact other inmates, prison officials and allocation of prison resources generally.

Hines, 148 F.3d at 358 (citing O'Lone, 482 U.S. at 350-53, 107 S.Ct. at 2400.)

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." As a general matter, prohibited punishments include those which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Thus under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 -

17

27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101

S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of

"the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an

Eighth Amendment violation); The Eighth Amendment "does not mandate comfortable prisons."

Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent that such conditions are

restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses

against society." Id. at 347, 101 S.Ct. at 2399; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995),

*citing* Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Lopez v.

Robinson, 914 F.2d 486, 490 (4th Cir. 1990). Sentenced prisoners are therefore constitutionally

guaranteed a nutritionally adequate diet under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions

of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective

standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and

safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 -

2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's

act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id.

at 298, 111 S.Ct. 2321 (*citing* Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to

establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that

'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively

the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166

(4th Cir. 1995)(*quoting* Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)).

*See also* White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must

18

suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.")

The Equal Protection Clause of the Fourteenth Amendment provides that "all persons similarly situated should be treated alike." Denying the adherents of one religion a basic feature of their religion while granting the same feature to the adherents of another religion is a violation of the Equal Protection Clause. The denial must be intentional and purposeful to be actionable under the Equal Protection Clause. Thus, the question is whether Plaintiffs are being treated differently in the exercise of their religion than others in the exercise of other religions, i.e., whether Plaintiffs are being discriminated against on the basis of their religion. If so, the next inquiry is whether the disparity in treatment is justified by legitimate penological interests. Morrison v. Garraghty, 239 F.3d 648, 657 (4th Cir. 2001).

The undersigned finds no evidence in the record that Plaintiffs' constitutional rights are being or will be violated. Rather, it is evident that Defendants are accommodating the basic features of Plaintiffs' religious beliefs by providing them with, among other things, a diet in conformity with their beliefs and the opportunity and a place to worship weekly and to read and study their religious texts. There is no indication that Defendants' conduct and/or policies as they impact Plaintiffs' exercise of their religious beliefs result in a sufficiently serious deprivation of a basic human need such that an Eighth Amendment violation is implicated. Finally, it is evident that Defendants attempt to accommodate the features of Plaintiffs' and other inmates' religious beliefs equally. The record does not contain any evidence that Defendants are intentionally and purposefully discriminating against Plaintiffs on the basis of their religious beliefs. The undersigned finds no indication that irreparable harm will result to Plaintiffs if a preliminary injunction/temporary restraining order is not

granted. The undersigned further finds that on the basis of the record as the Court currently has it, it is unlikely that Plaintiffs will prevail on the merits of their claims. Accordingly, injunctive relief is not appropriate.

**PROPOSAL AND RECOMMENDATION**

Accordingly, the undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Preliminary Injunction (Document No. 26.) and Motion for Temporary Restraining Order Without Notice (Document No. 56.).

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352

(1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

      The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to send a copy to Plaintiffs, who are acting *pro se*, and transmit a copy to counsel of record.

      Date: February 4, 2009.

R. Clarke VanDervort
United States Magistrate Judge

21