IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

EUGENE BLAKE, et al.,

                Plaintiffs,

v.                                          CIVIL ACTION NO.  2:08-cv-00906

JAMES RUBENSTEIN, et al.,

                Defendants.


**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiffs' Motion for Preliminary Injunction [Docket 26] and Motion for Temporary Restraining Order Without Notice [Docket 56].  Plaintiffs filed the instant action on July 8, 2008, alleging violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc *et seq.*, and the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.  Thereafter, Plaintiffs filed a Motion for Preliminary Injunction [Docket 26] on July 8, 2008, and a Motion for Temporary Restraining Order[1] [Docket

---

[1] The Motion for Temporary Restraining Order [Docket 56] was prepared and signed by Thomas Drescher, who is not a party to this action but represents that he has filed a nearly identical action in this Court.  The motion is not signed by any of the above-named Plaintiffs.  The Supreme Court has recognized prisoners' rights to confer with other inmates when preparing legal documents.  *See Johnson v. Avery*, 393 U.S. 483 (1969); *Wolff v. McDonnell*, 418 U.S. 539 (1974).  However, no court has recognized a right to be represented by non-party laypersons.  In fact, representation in federal courts is limited by statute to parties proceeding pro se or by counsel.  28 U.S.C. § 1654.  Many courts which have considered this issue, including the undersigned District Judge, have expressly held that prisoners have no right to such lay representation.  *See, e.g.*, *Herrera-Venegas v. Sanchez-Rivera*, 681 F.2d 41 (1st Cir. 1982); *United States v. Taylor*, 569 F.2d 448 (7th Cir. 1978); *McCray v. Craig*, 2007 WL 4255306 (S.D. W. Va. Nov. 29, 2007) (Johnston, J.).  Thus,
(continued...)

56], seeking an injunction to remedy a number of alleged violations of their rights based on their practice of the Hare Krishna religion. By Standing Order entered on August 1, 2006, and filed in this case on July 8, 2008, this matter was referred to United States Magistrate Judge Mary E. Stanley for submission of proposed findings and a recommendation (PF&R), pursuant to 28 U.S.C. §636(b)(1)(B). The case was originally assigned to the Honorable John T. Copenhaver, Jr., United States District Judge. On August 27, 2008, the case was reassigned to the undersigned District Judge and referred to Magistrate Judge R. Clarke VanDervort. Magistrate Judge VanDervort filed his PF&R on February 4, 2009, recommending that the Court **DENY** Plaintiffs' Motion for Preliminary Injunction [Dockete 26] and Motion for Temporary Restraining Order [Docket 56].

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are thirteen inmates currently incarcerated at Mount Olive Correctional Complex (MOCC) in Mount Olive, West Virginia. In their complaint and motion for preliminary injunction, Plaintiffs claim the following violations of their constitutional rights:

(1) Defendants failed to provide Plaintiffs with a diet prepared and served in accordance with Plaintiffs' religious beliefs;

(2) Defendants denied or restricted Plaintiffs' participation in Hare Krishna Sankirtana programs, rehabilitative programs, deity puja, Ekadasi fasts, and other holy days;

(3) Defendants prohibited the use of scented oils during Plaintiffs' religious ceremonies;

(4) Defendants failed to provide Plaintiffs with hygiene items that did not contain animal products;

---

[1](...continued)
because the TRO motion was not prepared by Plaintiffs or counsel, the Court will not consider it. However, the arguments set forth in that motion closely parallel the arguments originally included in the Motion for Preliminary Injunction [Docket 26], which the Court will consider below.

  (5)  Defendants failed to provide items in the commissary that conformed to Plaintiffs' religious beliefs; and

  (6)  Defendants failed to provide Plaintiffs with a place to display their religious items.

(*See* Docket 26.) Plaintiffs further allege that as a result of these violations, Defendants are "forcing [them] to choose between maintaining their physical health and following their religious beliefs," and causing their noncompliance with their religious beliefs. (Docket 26 at 4.) Plaintiffs accordingly seek a court order directing Defendants to:

  (1)  Provide meals that conform to Plaintiffs' religious beliefs;

  (2)  Accommodate Plaintiff's participation—including the preparation of special meals—in the Ekadasi fast days and at least three major Hare Krishna holy days;

  (3)  Stock the Commissary with goods that conform to Plaintiff's religious requirements;

  (4)  Permit Plaintiffs to obtain and possess Hare Krishna literature and worship paraphernalia in hard copy or in electronic format;

  (5)  Allow Plaintiffs to receive care packages from the Hare Krishna community at least four times per year;

  (6)  Place Plaintiffs in single-occupancy cells and permit them to shower every day at 4:00 a.m. and at other times according to their religious beliefs; and

  (7)  Develop policies and procedures to ensure that Plaintiffs' rights are not violated in the future, and cease any ongoing violations.

(Docket 26 at 5–8.)

  Defendants filed a consolidated response to the motion, attaching as an exhibit the affidavit of C.J. Rider, the Religious Services Coordinator at MOCC. (*See* Docket 78-5.) In his affidavit,

Mr. Rider generally refutes Plaintiffs' accusations and offers explanations as to why Plaintiffs' demands are not, or cannot be, met.[2] (*Id.*)

Magistrate Judge VanDervort examined the record and concluded that the evidence in the record—primarily the affidavits submitted by Plaintiffs and a number of Defendants, including Mr. Rider and Warden David Ballard—was insufficient to establish that Plaintiffs would suffer irreparable harm as a result of Defendants' policies and procedures. (Docket 100 at 12–13.) In so concluding, the Magistrate Judge discredited Plaintiffs' affidavits as "self-serving and conclusory," and credited the affidavits of Mr. Rider and Warden David Ballard because they were supported by further documentary evidence. (*See* Docket 100 at 13.) With regard to Plaintiffs' First, Fifth, Eighth, and Fourteenth amendment claims, the Magistrate Judge also found "no evidence in the record that Plaintiffs' constitutional rights are being or will be violated." (*Id.* at 19.) Thus, the Magistrate Judge recommended that Plaintiffs' motion for preliminary injunction be denied.

Plaintiffs filed their Objections[3] [Docket 110] to the PF&R on February 11, 2009. In that filing, Plaintiffs state that their "main and central focus" is that their meals are not prepared by fellow members of the Hare Krishna faith. (Docket 110 at 17.) Thus, Plaintiffs object to the finding that Defendants' failure to allow preparation by fellow Hare Krishnas does not create a substantial burden on Plaintiffs' constitutional rights. Plaintiffs also take issue with the Magistrate Judge's

---

[2] The applicable portions of Mr. Rider's affidavit will be addressed in detail below as they relate to Plaintiffs' objections.

[3] Like the motion for temporary restraining order, Plaintiffs' objections also appear to have been prepared by Thomas Drescher. However, the document bears the signatures of the named Plaintiffs and is merely accompanied by a letter to the Clerk from Mr. Drescher. Absent definitive proof that the document was prepared by Mr. Drescher, the Court will not disregard it, however, the filing will be given due weight.

crediting of Defendants' affidavits and discrediting of Plaintiffs affidavits and with the finding that no lesser restrictive means exists to justify the alleged burden. Finally,[4] Plaintiffs object to the failure to hold a hearing to allow them to establish the essential elements for a preliminary injunction as set forth in *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977).

On February 10, 2009, Plaintiff Blake filed a separate document titled Objection of Plaintiff Eugene Blake of Proposed Findings and Recommendation [Docket 105]. In that filing Plaintiff Blake fails to identify any portion of the PF&R to which his objections are addressed. In fact, the document is generally addressed toward his conditions of solitary confinement and his desire to have Thomas Drescher assist him in preparing his legal filings, an issue which was previously addressed by the Magistrate Judge. Accordingly, Plaintiff Blake's Objections [Docket 105] are **OVERRULED**. Defendants filed responsive briefs on February 19 and 26, 2009, essentially stating that they agree with the reasoning included in the PF&R and asking that it be adopted. The briefing is complete, and the matter is now ripe for the Court's consideration.

## II. APPLICABLE LAW

### A. *Standard of Review*

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

---

[4] In their brief, Plaintiffs also object to the Magistrate Judge's characterization of Ekadasi fast days as "personal fasts," (Docket 110 at 8), and to "their required diet being characterized as vegan," (*id.* at 13). Those "objections" are of no legal significance and will accordingly not be addressed as such; however, the Court will consider the manner in which these activities are characterized when addressing Plaintiffs' other objections. Also included in the brief are "objections" to Magistrate Judge VanDervort's Order [Docket 99] resolving a number of motions previously filed by Plaintiffs. Because those motions are not at issue here, the Court will not address them in this Memorandum Opinion and Order; however, the Court will address them at a later time, if necessary.

However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Here, Plaintiffs timely filed objections to the PF&R on February 11, 2009, and Defendants responded on February 19 and 26, 2009, respectively. When reviewing portions of the PF&R de novo, the Court will consider the fact that Plaintiffs are acting pro se and will accord their filings a liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

    *B.*    *Preliminary Injunction Standard*

The issuance of a preliminary injunction is entrusted to the district court's discretion. *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524–25 (4th Cir. 2003). When considering a motion for a preliminary injunction, courts in the Fourth Circuit follow the "hardship-balancing test" first articulated in *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977). The test involves four factors:

    (1)    the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;

    (2)    the likelihood of harm to the defendant if the requested relief is granted;

    (3)    the likelihood that the plaintiff will succeed on the merits; and

    (4)    the public interest.

*Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citing *L.J. ex rel. Darr v. Massinga*, 838 F.2d 118, 120 (4th Cir. 1988)).

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Thus, where Plaintiffs' alleged harm "is inseparably linked to [a] claim of a violation of [their] First Amendment rights," the Court must first turn to Plaintiffs' likelihood of success on the merits. *Newsom ex rel. Newsom v. Albermarle County Sch. Bd.*, 354 F.3d 249, 254–55 (4th Cir. 2003); *see also Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 511 (4th Cir. 2002) ("Determination of irreparable harm thus requires analysis of [the plaintiff's] likelihood of success on the merits, and we turn to this question first.") Accordingly, the Court will first address Plaintiffs' likelihood of success on the merits.[5]

C.  RLUIPA

In enacting RLUIPA, Congress provided that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

(1)   is in furtherance of a compelling governmental interest; and

(2)   is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Once a plaintiff establishes a prima facie case of a violation of the Free Exercise Clause or RLUIPA, the burden of persuasion shifts to the Government on all elements except as to whether the Government practice substantially burdens the exercise of religion. 42

---

[5] Because RLUIPA was intended to codify First Amendment jurisprudence, *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 350 (2d Cir. 2005), most courts to have addressed the issue treat RLUIPA claims the same as First Amendment claims in the preliminary injunction context. *See, e.g.*, *Sossamon v. Texas*, ___ F.3d ___, 2009 WL 382260, *12 (5th Cir. Feb. 17, 2009) ("We . . . perceive no remedial differences between RLUIPA and the Constitution for purposes of an injunction."); *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005).

U.S.C. § 2000cc-2(b). "[A] substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (citing *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981)). When applying the compelling governmental interest standard, courts should do so with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id.* at 190 (citing *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005)) (internal quotation marks omitted). In short, "RLUIPA . . . is not meant to 'elevate accommodation of religious observances over an institution's need to maintain order and safety.'" *Id.* (citing *Cutter*, 544 U.S. at 722).

### III. ANALYSIS

Plaintiffs' objections are generally addressed to one of four issues:

(1)  the crediting of Defendants' affidavits and discrediting of Plaintiffs affidavits;

(2)  the finding that Defendants' failure to allow food preparation by fellow Hare Krishnas does not create a substantial burden on Plaintiffs' constitutional rights;

(3)  the finding that no lesser restrictive means exists to justify the alleged substantial burden;

(4)  the failure to hold a hearing to allow Plaintiffs to establish the essential elements for a preliminary injunction.

(*See* Docket 110.) Plaintiffs do not object to those portions of the PF&R that address their Fifth, Eighth, and Fourteenth Amendment claims. Accordingly, the Court **ADOPTS** those portions of the PF&R and will address each of the objections in turn.

### *(1)* *Affidavits*

Plaintiffs object to the finding that Plaintiffs' affidavits "are all self serving, while simultaneously lauding Defendants' affidavits."[6] (Docket 110 at 13.) Specifically, Plaintiffs contend that they are "at a distinct disadvantage" because they are neither able to obtain statements by prison staff nor permitted to corroborate their affidavits with photographs and documentary evidence. (*Id.*) Moreover, Plaintiffs assert, the PF&R did not account for the affidavits of Hare Krishna clergy and scriptural evidence to support the alleged substantial burden on their religious practices.

In support of his decision to discredit Plaintiffs' affidavits, Magistrate Judge VanDervort cited *Evans v. Techs. & Applications Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996), for the proposition that courts "generally consider self-serving opinions without objective corroboration not significantly probative." A review of Plaintiffs' affidavits reveals that the Magistrate Judge's finding was correct; many of the statements contained in the affidavits merely state that Plaintiffs' practice of the Hare Krishna religion was "substantially burdened," (Docket 25-2 at 3), or that Plaintiffs are "forced to dramatically alter [their] behavior and [are] unable to access the full advantage and rehabilitative benefit of [their] religious experience." (*Id.* at 6.) Although Plaintiffs do identify a number of practices by which the alleged burden is imposed, Plaintiffs' characterizations of these practices are contradicted by Defendants' affidavits, which are supported by objective evidence, such as copies of photographs and documentation of MOCC's policy statements. Because Defendants' affidavits are supported by objective evidence, that testimony

---

[6] Plaintiffs also dispute, paragraph by paragraph, the testimony included in the affidavits of Mr. Rider and Warden Ballard. This dispute is more accurately categorized under their objection to the Magistrate Judge's decision to credit that testimony in its entirety and will be addressed as such.

must naturally be credited above testimony that is not so supported. Accordingly, Plaintiffs' objection on this issue is **OVERRULED**. To the extent that Plaintiffs' remaining objections are based on disputed declarations that the Magistrate Judge found to be credible,[7] those objections are likewise **OVERRULED**.

### *(2)   Substantial Burden*

Plaintiffs next object to the Magistrate Judge's finding that they had not "produced any evidence demonstrating that Defendants' conduct and policies have substantially burdened their religious activities." (Docket 100 at 13.) Specifically, Plaintiffs dispute the finding that their diet is prepared and served in conformity with their religious beliefs. Plaintiffs assert that, although the content of their diet may be in conformity with their beliefs, the food is prepared by persons other than Hare Krishna adherents, making it unfit for them to eat. In support of their objection, Plaintiffs cite to *Walls v. Schriro (Walls I)*, No. CV 05-2259-PHX-NVW (JCG), 2008 WL 544822 (D. Ariz. Feb. 26, 2008), where the court found that denying a Hare Krishna devotee a prasadam diet while in prison "placed a substantial burden on his essential practice of the Hare Krishna religion." (Docket 110 at 12.)

*Walls I* is factually similar to the case at bar. In *Walls I*, a Hare Krishna devotee incarcerated by the Arizona Department of Corrections (AZDOC) sued the AZDOC and several corrections officers under the First Amendment and RLUIPA. In support of his claims, he alleged that his religious freedoms were being infringed upon because his meals were not prepared by fellow

---

[7] For example, Plaintiffs state that they "object to and dispute item 20, page 7," (Docket 110 at 16), of Mr. Rider's affidavit, wherein Mr. Rider articulates MOCC's rationale for not allowing Plaintiffs to shower at 4:00 a.m. and for not providing them with extra toiletry supplies. The Magistrate Judge found this portion of Mr. Rider's affidavit to be credible and determined that such a rationale does not create a substantial burden on Plaintiffs' religious practices.

adherents of the Hare Krishna faith and because the diet provided for him included prohibited items such as garlic, onions, eggs, and caffeinated beverages. The district court found that "[r]equiring Plaintiff to eat food that is prohibited by his religion's dietary regimen *may* constitute a substantial burden on his religious practice." *Walls I*, 2008 WL 544822, at \*5 (citing *Ward v. Walsh*, 1 F.3d 873, 878 (9th Cir. 1993)) (emphasis added). The court concluded:

> In light of Congress' intent for courts to construe RLUIPA broadly in favor of prisoners' rights to exercise their religious beliefs, and given Plaintiff's sincere belief that eating meals prepared by Hare Krishna devotees *and excluding certain food items* is a requirement of his faith, the Court finds that there is a substantial burden on Plaintiff's religious exercise.

*Id.* (emphasis added).

Here, Plaintiffs do not contend that they are required to eat foods that are not part of the prasadam diet. Rather, their main contention is that their food is not prepared by fellow members of the Hare Krishna faith. The instant case is therefore distinguishable from *Walls*, where the court considered *both* eating meals prepared by non-Hare Krishna devotees *and* excluding certain food items to be a substantial burden.[8] In light of the evidence presented in the instant case, the Court **FINDS** that eating meals prepared by non-Hare Krishna inmates, standing alone, does not amount to a substantial burden. Accordingly, Plaintiffs' objection on this issue is **OVERRULED**.

### (3) Lesser Restrictive Means

If the Court had found that Defendants' conduct and policies created a substantial burden on Plaintiffs' religious rights, the Government would then bear the burden of showing that the conduct

---

[8] To the extent that the instant case is similar to *Walls*, the Court notes that it is not bound by the decisions of the United States District Court for the District of Arizona. The Court is not aware of any other cases addressing this precise issue.

and policies were the least restrictive means of furthering a compelling governmental interest. Here, Plaintiffs contend that a lesser restrictive means exist:

> Plaintiffs could prepare and cook their own meals at minimal or no extra expense, i.e., simply enlisting or substituting authorized Hare Krishna practitioners to prepare and cook their own meals instead of non-Hare Krishna practitioners, or, alternatively, have Hare Krishna meals provided by the New Vrindaban Hare Krishna community of Marshall County, West Virginia[,] at minimal cost, paying only for shipping, or a combination of the above two proposals. Also, the New Vrindaban Community has offered to provide limited quantities, at no charge, [of] spices, dry goods (lentils, beans, etc.) and cooking equipment and utensils.

(Docket 110 at 12–13.) Plaintiffs do not dispute that Defendants have a compelling governmental interest in the effective operation of a prison facility. *Cf. Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005) ("We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety.").

Although the substantial burden analysis differs from *Walls I*, that court's treatment of the least restrictive means element is nevertheless instructive here. Upon finding that a substantial burden existed, the district court there originally found that the declarations made in an affidavit by the AZDOC Administrator of Pastoral Activities—specifically that accommodating Plaintiff's requests would "significantly upset institutional operations and present a financial difficulty,"—were "too general to make the requisite showing of a compelling interest." *Walls I*, 2008 WL 544822, at *6. Based on this finding, the court denied the Defendants' summary judgment motion. The Defendants then filed a second summary judgment motion and included a number of affidavits setting forth the extensive security concerns and difference in cost of providing meals in conformity with the Plaintiff's requests. *See Walls v. Schriro (Walls II)*, No. CV 05-2259-PHX-NVW, 2008 WL 2463671, at *6 (D. Ariz. June 16, 2008). In light of the new evidence, the court found that "there would be significant financial, administrative, and security effects on the prison if it were

required to provide Plaintiff specially prepared Hare Krishna meals." *Id.* at *8. Rejecting the Plaintiff's claims that his requests would not require added costs or security concerns, the court held that no lesser restrictive means was available and granted summary judgment in favor of the Defendants. *Id.*

Although the Plaintiff's request in *Walls II* for meals to be provided by an outside source, *see Walls II*, 2008 WL 2463671, at *8, differs from Plaintiffs' request to prepare meals for themselves in the case at bar, the Government's concerns are nevertheless the same. In his affidavit, Mr. Rider asserts that "[n]either the secure, cost-effective and orderly operation of the dining room, nor the custody requirements of a maximum security prison, will permit us to afford any faith group the right to prepare meals exclusively for members of their own faith group. However, Hare Krishna inmates may apply to work in the kitchen in the same manner as non-Hare Krishna inmates." (Docket 78-5 ¶ 7.) Allowing that type of special treatment for Hare Krishna inmates may lead to other groups seeking the same treatment, which would create logistical and security concerns for prison staff. Moreover, creating a preference for Hare Krishna inmates when choosing kitchen workers would unfairly preclude non-Hare Krishna inmates from being able to earn money and contribute to the operation of the prison—both of which are important to an inmate's rehabilitative efforts.

To the extent that Plaintiffs desire to have their meals prepared by persons outside MOCC, the security concerns there mirror those articulated by the court in *Walls II*, namely the risk of contraband being added to the meals during preparation, delivery, and distribution. 2008 WL 2463671, at *7. Those risks are lessened, if not eliminated, when meals are prepared on-site or provided by outside contractors in sealed containers and distributed to a large number of inmates.

Further, there is no evidence in the record—aside from the bald assertions contained in their brief—to suggest that Plaintiffs' proposal to have meals provided by the New Vrindaban community at "minimal" cost or "no charge" is feasible. New Vrindaban has not provided any affidavit or other sworn statement to indicate that such an offer is legitimate. Accordingly, even if Defendants' policies and conduct have created a substantial burden on Plaintiffs' religious activities, Defendants have met their burden of showing that the policies and conduct are the least restrictive means of furthering their compelling governmental interest in the safe and secure operation of MOCC. Plaintiffs' objection on this issue is therefore **OVERRULED**.

### D. *Failure to Hold a Hearing*

Finally, Plaintiffs object to the Magistrate Judge's failure to hold a hearing "to determine the full facts of this case." (Docket 110 at 17.) The Federal Rules of Civil Procedure provide: "The court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). There is no requirement that a district court conduct a hearing on every request for an injunction. *See Kaimowitz v. Orlando, Fl.*, 122 F.3d 41, 43 (11th Cir. 1997); *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172 (3d Cir. 1990). Rather, a district court has discretion when determining whether a hearing is appropriate. 6 James Wm. Moore et al., *Moore's Federal Practice* ¶ 10.22(6)(a) (3d ed. 1999). Here, Magistrate Judge VanDervort determined that in light of Plaintiffs' legal theory and the evidence presented via affidavit, a hearing was unnecessary. Upon review of the record, the Magistrate Judge's determination was appropriate and Plaintiffs' objection on this issue is therefore **OVERRULED**.

## *IV. CONCLUSION*

In light of the foregoing analysis, the Court **FINDS** that Plaintiffs have not made an adequate showing of success on the merits to require the issuance of a preliminary injunction. Moreover, while irreparable harm is presumed on a First Amendment claim, Plaintiffs have been living under their current conditions since their date of incarceration. Thus, any ongoing burden on their religious freedom is not pressing, especially in light of the multitude of significant modifications that would be necessitated by the grant of an injunction, such as changes in the manner by which the kitchen is staffed and meals are prepared. Requiring such sweeping changes in the administration of MOCC would exact a heavy burden on prison staff and on taxpayers who would be required to foot the bill for any additional expenditures. This final concern also weighs in favor of Defendants when the public interest is considered. Despite Plaintiffs' contention that "[t]he public interest is always served when justice is expanded," (Docket 110 at 17), the safety and security concerns presented by Plaintiffs' requests are too great to be required unless and until the Court rules in Plaintiffs' favor in a final decision on the merits. Accordingly, Plaintiffs have not made an adequate showing that they are entitled to injunctive relief on their RLUIPA claim. It is well-established that "the First Amendment affords less protection to inmates' free exercise rights than does RLUIPA." *Lovelace*, 472 F.3d at 199–200. Thus, because Plaintiffs are unable to meet their burden under RLUIPA, their First Amendment claim seeking a preliminary injunction must fail as well.

Based on the foregoing analysis, Plaintiffs' Objections [Dockets 105 and 110] are **OVERRULED**. The Court **ADOPTS** the recommendation contained in the PF&R [Docket 100], and **DENIES** Plaintiffs' Motion for Preliminary Injunction [Docket 26] and Motion for Temporary

Restraining Order [Docket 56]. A separate Judgment Order will enter this day implementing the rulings contained herein.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:    March 17, 2009

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE